## JOHN BATES *vs.* CALVIN WILLARD.

In the levy of an execution, the real estate levied on was described as " all the land, supposed to be about 200 acres, that is or can be overflowed by the water raised by the great dam, at its present height, and all the real estate, rights and privileges conveyed to " the execution debtor, " by deeds from the following persons, recorded in the registry of deeds, as follows, to wit," among others, " D. D. recorded book 306, page 138 :" On that book and page of the registry were two deeds from D. D. conveying different parcels of land. *Held,* that the levy was not, for that cause, void for uncertainty ; but that the land levied on included that which was described in both deeds, or in one of them only, according to the further description of the land in the levy.

A return of a levy of an execution stated an appraisement and setting off of a certain tract of land by metes and bounds ; "also *all the land,* supposed to be about 200 acres, that is or can be overflowed by the water raised by the great dam across P. H.

Brook, situate on the tract of land first above described, at its present height, with the right of flowing all such land, and of keeping said dam at its present height, and all the other rights of flowing, and other privileges and appurtenances belonging to said dam and land, and all the real estate, rights and privileges conveyed to the " execution debtor by certain deeds referred to ; " also *the right and privilege* of raising the dam across said P. H. Brook, connected with the mill owned by M. L. in the year 1836, *being the dam next above the great dam* aforesaid, to the height of four feet," &c., " and the right, now and at all times, to maintain, repair and re-build said dam, to the height aforesaid," &c.; " also, *all the land,* supposed to be about 150 acres, that is or can be overflowed by the water raised by the said L. dam at its present height, with the right of flowing all such land, and of maintaining said dam at its present height, and all other the rights, privileges and appurtenances belonging to said dam and land, and all the real estate, rights and privileges which were conveyed to the" execution debtor, by deeds from certain persons named: The whole of the estate, as above described, with all the privileges and appurtenances thereunto belonging, were appraised and set off at a single sum : In an action to try the validity of this levy, it was objected that the levy was invalid, because it appeared that part of the estate therein described was appraised twice. *Held,* that this objection was not apparent on the return ; that the various forms of describing the property levied on were adopted with a view to pass the entire estate of the debtor, as his interest in the estate might afterwards be more fully disclosed ; and that the objection to the levy could not prevail.

t is sufficient, in the levy of an execution on a debtor's right and privilege to raise a dam, and overflow, &c. the land of A., to set off such right and privilege, " subject to the conditions, exceptions and reservations named in the deed of said A." to the execution debtor, without specifying those *conditions, exceptions and reservations.*

When appraisers certify that real estate, which is seized on execution, cannot be divided without damage to the whole, and they therefore set off to the execution creditor a fractional part, to be held by him in common with others, and the levying officer makes his return accordingly, the court must hold, in an action against the officer for making a defective levy, that it was necessary to set off the estate in that manner.

When an officer, in his return of the levy of an execution, states that he delivered to A., the agent of the execution creditor, seizin and possession of the premises levied on, such creditor, in an action against the officer for a defective levy, cannot give evidence that A. was not his agent.

An officer made a return of the levy of an execution on a certain fractional part of real estate described in the return, stating that he had delivered seizin and possession thereof to the execution creditor, and thereupon deposited the execution, with the return indorsed thereon, in the office of the register of deeds, for record : Finding that this levy had been, by mistake, made for too large a sum, and was therefore invalid, the officer applied to the register to give back to him the papers · out the register declined so to do, before they should be extended on the record : The officer thereupon, before the time when the execution was made returnable, and before it was returned into the office of the clerk of the court, procured the appraisers, whom he had employed in the first levy, to make a new appraisement and setting off, and he made a new and correct return, stating a levy on a smaller fractional part of the same real estate, and also stating that he had delivered seizin and possession thereof to A., the agent of the execution creditor; and he annexed said return, by permission of the register, to the execution then lying in the register's office, and therein declared that he meant and intended it as the true and only return of his doings in regard to the levy of said execution: This return was extended on the record, by the register, immediately after the record, which he had, ir the

Bates *v.* Willard.

mean time, made of the execution and former levy, and the officer then drew across his original return a black line, without the register's consent: No adverse right to the estate levied on was acquired by any third person, between the times of depositing the first and second returns in the register's office, for record. *Held*, in an action by the execution creditor against the officer, for an alleged default in not making a valid levy, that the officer had authority to make an amended return of, his levy; that this amended return was valid and effectual; and that the execution creditor had no cause of action against him.

THIS was an action of trespass upon the case against the late sheriff of Worcester, for an alleged default of his deputy, Ivers Phillips, in not making a valid levy of an execution. The trial was before *Dewey*, J. whose report of the evidence, &c. was as follows:

The plaintiff was a creditor of the Dudley Woollen Manufacturing Company, a corporation duly established by law in this State, and having its place of business in Dudley, in the county of Worcester; and on the 16th of June 1842, the plaintiff, as such creditor, and sixty three others, creditors of said company, instituted actions for the recovery of their several demands against said corporation. Said company being then seized and possessed of a large real estate within that county, and of a valuable personal estate also, the plaintiff and the said other creditors placed their writs in the hands of said Phillips, then a deputy of the defendant, for service, with directions to attach all their real and personal estate within the precinct of the officer. Said property was returned by Phillips, as simultaneously attached on the plaintiff's writ and on the writs of the other creditors. The said actions were entered in the court to which they were made returnable, viz. the court of common pleas, for said county of Worcester, at the August term thereof, in 1842, and said actions were continued to the following December term of said court, when judgment was recovered in all said actions. The plaintiff's judgment was for $6171·28, debt, and $11·56, costs.

These sixty four simultaneous attachments of the said company's property, including the plaintiff's, were made subject to two previous attachments thereof, upon two writs against said company; one in favor of Ellis G. Loring, and the other

Bates *v.* Willard.

n favor of the Norfolk Manufacturing Company, a manufacturing corporation.

The plaintiff and the other simultaneously attaching credtors sued out writs of execution upon their respective judgments on the 13th of December 1842, and they were on that day delivered to said Phillips, for service. Executions were also sued out, at the same time, on the judgment of said Norfolk Manufacturing Company and said Loring; and the officer, on the 15th of said December, seized the personal property so attached by him on the writs in said suits; and on the 10th, 12th and 23d days of January 1843, the said Phillips sold, according to law, of said personal property, to the amount of about $33,200. On the 26th day of said January he sold the residue of said personal property, and the sales of that day were about $600. There had been a previous sale, by consent of parties, upon the writs, to the amount of about $238. The proceeds of the personal property were more than sufficient to satisfy the execution of said Loring and said Norfolk Manufacturing Company, and all costs and charges; leaving a balance of $4042·09, which, the plaintiff contended, was to be equally divided among the sixty four simultaneously attaching creditors, giving the sum of $63·16 to each creditor, as appeared by reference to the return on the said Norfolk Company's execution.

It was admitted that said Dudley Woollen Manufacturing Company was seized and possessed of real estate in said county, at that time, more than sufficient, with said balance of $4042·09 of personal property, to satisfy all the executions of said sixty four simultaneously attaching creditors, which was shown to said Phillips by the said creditors. The plaintiff duly appointed an appraiser, as did also the said execution debtors; and the officer, with the appraisers, who had been duly sworn, entered on the said real estate, on the 17th day of said December. His return bore date of that day; but he also returned that he seized said estate on the 15th day of said December. The appraisement was perfected about the last of January, and the certificate of the appraisers was signed

6 *

by two of them about the 1st of February 1843, and by the other about the middle of February, when seizin was delivered to the plaintiff himself, as appeared by his receipt indorsed on the back of the execution.   The other sixty three executions were extended upon said real estate at the same time, and were so levied as to make the execution creditors tenants in common of the said real estate, in shares proportionate to the several amounts for which each execution was levied thereon.   Said executions were, in all said returns, stated to have been levied for balances due on them.   The plaintiff's execution was stated, in the return, to have been levied for a balance, but was in fact levied for $20·75 more than the debt, costs, and charges of levy.

The following is a copy of this levy :

Worcester, ss.   December 17th, A. D. 1842.   We, the subscribers, having been first duly chosen and sworn, as above certified, faithfully and impartially to appraise such real estate as should be shown unto us to satisfy this execution with all costs, have proceeded with the officer, Ivers Phillips, to view and examine, so far as necessary to form a just estimate of its value, the whole of the following described real estate, with all the buildings, water privileges, watercourses and appurtenances thereto belonging, situate in Dudley, in said county, shown to us by the within named John Bates, the creditor, as the estate of the Dudley Woollen Manufacturing Company, the debtors within named, to wit, a certain tract of land, with the buildings thereon, and all the privileges and appurtenances, bounded as follows :   Beginning at the abutment of the turnpike bridge across French River, near the Webster Depot, on the northerly side of the bridge, and the westerly side of the river, thence, bounding on said turnpike as the wall now stands, south 83¼ deg. west, 13 rods, to the road leading to the store in the Merino Village, this line curving a little at the beginning ; thence, across said road bounding on said turnpike, south 65 deg. west, 7 rods ; thence, bounding on said turnpike, south 42 deg. west, 14 rods ; thence, bounding on said turnpike, south 68 deg. west, 24 rods 4 links, to the westerly side of another road leading through said village ; thence, bounding on said road, north 13 deg. east, 8 rods and 3 feet ; then, turning at right angles and running north 77 deg. west, 6 rods ; then, turning at right angles and running south 13 deg. west, 11½ rods, to said turnpike ; thence, bounding on said turnpike, south 68 deg. west, 25½ rods, to a wall ; thence north, 74¼ deg. west, 38¼ rods ; thence north 5¾ deg. west, 88½ rods ; thence south 89¾ deg. east, 35 rods 21 links ; thence south 34 deg. east, 41½ rods ; thence north 79¼ deg. east, 9 rods 15 links ; thence north 23 deg. east, 23 rods 8 links ; thence south 77 deg. east, 25 rods 22 links, across the road ; thence north 26 deg. east, 3 rods ; thence north 38¾ deg. east, 21 rods

Bates *v.* Willard.

11 links; thence north 4 deg. east, 4 rods; thence north 38¾ deg. east, 16 rods 15 links; thence south 67¾ deg east, 25 rods 8 links; thence north 20 deg. east, 10½ rods; thence south 70½ deg. east, 14 rods 19 links; thence north 17 deg. east, 21 rods; thence north 89¾ deg. east, 14 rods 3 links; thence south 14 deg. east, 54¼ rods, to the westerly line of the railroad as located; thence, bounding on said railroad, south 36¾ deg. west, 26 rods to the French River; thence, in the same direction, to the middle of the stream; thence, down said river, in the middle of the stream, 89 rods 11 links to the bridge aforesaid; thence, by said bridge, to the abutment, the place of beginning.

Also, all the land, supposed to be about two hundred acres, that is or can be overflowed by the water raised by the great dam across Powder Horn Brook, so called, meaning the Main Reservoir Dam, situate on the tract of land first above described, at its present height, with the right of flowing all such land and of keeping said dam at its present height, and all the other rights of flowage and other privileges and appurtenances belonging to said dam and land; and all the real estate, rights and privileges conveyed to the Dudley Woollen Manufacturing Company, by deeds from the following persons, recorded in the registry of deeds for said county, as follows, to wit: Joshua Davis, recorded book 245, page 388; William Larned, recorded book 245, page 386; David Dodge, recorded book 245, page 389; Henry Davis, recorded book 245, page 387; John Kingsbury and Stephen Kingsbury, recorded book 245, page 389; Henry Davis, recorded book 306, page 136; *Dyer Davis, recorded book 306, page 138;* Paul Dodge and Harvey Dodge, recorded book 306, page 137; Morris Larned, recorded book 306, page 140; William Larned, recorded book 306, page 141.

Also, the right and privilege of raising the dam across said Powder Horn Brook, connected with the saw mill owned by Morris Larned, in the year 1836, and known as the Larned Dam, being the next above the Great Dam aforesaid, about a mile distant therefrom, to the height of four feet above the top stones of the dam as they then were, and of carrying out and continuing each end of said dam on a level with the four feet to be raised as aforesaid, until the same shall strike the banks or uplands on each side of said brook, at the nearest point which is of sufficient height to prevent the water from running around the ends of said dam; and the right now, and at all times hereafter, to maintain, repair and rebuild said dam to the height aforesaid; and the right now, and at all times hereafter, to enter upon the land of said Larned, and take stones and gravel free of cost, for raising, repairing and maintaining and rebuilding said dam; and the right of flowing back the water to such height and extent as said dam, with the aforesaid additional height, will flow back the same; and the right now, and at all times hereafter, of letting down the water from the reservoir formed by the dam aforesaid, in sufficient quantities daily to drive or carry the water wheels, mills and machinery, upon said first described tract, below said dam, provided the said Larned, his heirs or assigns shall fail or cease to draw or let down from said reservoir the aforesaid quantity of water, and not otherwise, but at no time to draw a greater quantity

than may be necessary to operate the mills and machinery aforesaid during the same length of time in which the water is running; and the right of stopping, and retaining the water in said reservoir, to the height aforesaid, whenever the aforesaid reservoir below shall be full, and whenever it shall be necessary to stop and retain the same for the purpose of repairing or rebuilding the dam or floom on said first described tract below; subject, however, to the conditions, exceptions and reservations named in the deed of said Morris Larned to the Dudley Woollen Manufacturing Company, recorded in the registry aforesaid, book 317, page 245.

Also, all the land, supposed to be about one hundred and fifty acres, that is or can be overflowed by the water raised by the said Larned Dam at its present height, with the right of flowing all such land, and of maintaining said dam at its present height, and all other the rights, privileges and appurtenances belonging to said dam and land, and all the real estate, rights and privileges which were conveyed to the Dudley Woollen Manufacturing Company, by deeds from the following persons, recorded in the registry aforesaid, as follows: Samuel Davis, recorded book 314, page 114; Morris Larned, recorded book 317, page 245; Alanson Bates, recorded book 314, page 115; Josiah Corbin, recorded book 348, page 441.

Also, the dam at the outlet of Hayden Pond, so called, about two miles, by said brook, distant from said Larned Dam, and all the land that is or can be overflowed by the water raised by the same at its present height, with the right of flowing all such land, and of keeping said dam at its present height, and all other rights of flowage, and other privileges and appurtenances belonging to said dam and land, and all the real estate, rights and privileges conveyed to the Dudley Woollen Manufacturing Company by a deed from Daniel Mansfield, recorded in the registry aforesaid, book 259, page 171.

Also, the dam at the outlet of Peter Pond, so called, about half a mile northerly of the Main Reservoir Pond aforesaid, and all the land that is or can be overflowed by the same at its present height, with the right of flowing all such land and of keeping said dam at its present height, and all other rights of flowage and other privileges and appurtenances belonging to said dam and land.

And we have appraised the whole of the above described real estate, with all the privileges and appurtenances thereto belonging, at thirty five thousand three hundred fifty nine dollars and sixty eight cents; and whereas said real estate cannot be divided without damage to the whole, and is more than sufficient to satisfy this execution, and is subject to certain other attachments made simultaneously with that in the suit on which this execution issued, which are in favor of the following persons; [naming them] and whereas the executions, with the costs and charges thereon, which issued in the suits in which said attachments were made, together with this execution, remain to be levied upon said real estate to the aforesaid amount of *thirty five thousand three hundred fifty nine dollars and sixty eight cents,* we have therefore set off to the said John Bates *six hundred twenty seven thousand five hundred and ninety*

*four undivided three million five hundred and thirty five thousand nine hundred and sixty eight parts* of the above described real estate, to hold to him the said John Bates, the creditor, his heirs and assigns forever, in common and undivided with the other attaching creditors aforesaid, which said fractional part of $\frac{627594}{3535968}$, so set off to the said John Bates, the creditor, we have appraised at *six thousand two hundred seventy five dollars and ninety four cents.*

Peter Farnum.

Jonathan Day.

Moses Barnes.

Worcester, ss. December 17th, A. D. 1842. By virtue of this execution, on the fifteenth day of this same December, I seized the real estate described in the foregoing certificate of the appraisers, and afterwards I caused three disinterested and discreet men, inhabitants of said county, to be sworn as appraisers as above, to wit: Peter Farnum, who was appointed by the within named John Bates, the creditor; Jonathan Day, who was appointed by the Dudley Woollen Manufacturing Company, the debtors; and Moses Barnes, who was appointed by me; and the said Farnum, Day and Barnes having been first duly sworn faithfully and impartially to appraise such real estate as should be shown unto them to satisfy this execution with all costs, and the real estate above described in the foregoing certificate of said appraisers having been so shown to them and to me by the said creditor, as the estate of the said debtors, and they having proceeded with me to view and examine the same, so far as necessary to form a just estimate of its value, and it happening that said real estate cannot be divided without damage to the whole, and is more than sufficient to satisfy this execution, and is subject to certain other attachments, made simultaneously with that in the suit on which this execution issued, (which are in favor of the persons named as such attaching creditors in the foregoing certificate of said appraisers,) and that the executions with the costs thereon, which issued in the suits in which said attachments were made, together with this execution, remain to be levied upon said real estate to the aforesaid amount of thirty five thousand three hundred fifty nine dollars and sixty eight cents; the said appraisers, therefore, this day appraised the whole of said real estate, with all the buildings, water privileges, watercourses and appurtenances thereto belonging, described in their above written certificate, which is to be referred to for a description, at the sum of thirty five thousand, three hundred fifty nine dollars and sixty eight cents; and also appraised *six hundred twenty seven thousand five hundred and ninety four undivided three million five hundred and thirty five thousand nine hundred and sixty eight parts thereof, at the sum of six thousand two hundred seventy five dollars and ninety four cents,* and set off said fractional part of $\frac{627594}{3535968}$ to the said John Bates, the creditor, at the price aforesaid, which is the balance due on this execution, with all fees and charges, to hold to him, his heirs and assigns forever, in common and undivided with the other attaching creditors aforesaid. All which appears by the certificates of the justices of the peace and of said appraisers above written, which are hereby referred to and

Bates *v.* Willard.

made part of this return. And I this day levied this execution upon said fractional part of said real estate, with all the buildings, water privileges, watercourses and appurtenances thereto belonging, to wit: $\frac{627,594}{3,535,968}$ thereof, and delivered seizin and possession thereof to the said creditor, to hold to him, his heirs and assigns forever, in common with the other attaching creditors aforesaid, in full satisfaction of the balance due on this execution, as by his receipt hereon appears; and so I return this execution satisfied.

(Fees $72·10.)      Ivers Phillips, *Deputy Sheriff.*

Worcester, ss. December 17th, A. D. 1842. Received of Ivers Phillips seizin and possession of the above described premises, in full satisfaction of the balance due on this execution.      John Bates.

One of the appraisers testified (and if the evidence was admissible, the fact is, for the purposes of this trial, to be taken as proved) that Phillips said to him, when the appraisers last met to perfect and complete their appraisement and set-off of the real estate, that he had applied this amount ($63·16, the proceeds of the personal property) in part satisfaction of the plaintiff's execution, and that he requested them to appraise and set off real estate for the balance due on said execution. The executions of said sixty four creditors were levied so as to include and cover all the fractional parts into which the estate levied on was divided, and they thus became tenants in common of the whole of said estate described in the return.

The plaintiff's execution, with the said return thereon indorsed, was duly deposited for record. in the registry of deeds for said county of Worcester, by said Phillips, on the 25th of said February, and the usual entry was then made, in the register's book, of the receipt of said execution and return; but the same was not actually recorded upon the books of the office till after the 6th of March 1843. Within three days after the said 25th of February, the said Phillips applied to the register of deeds for leave to take the plaintiff's execution, with those of the said other creditors, which were returnable to the court of common pleas which was to be held on the first Monday of March then current, from the register's office, stating that he had discovered certain errors in his returns thereon, which he wished to correct. The register refused to permit him to take them from the office or to alter them, till

tne same had been duly extended upon and registered in the record books for the county. The said Phillips then proceeded to procure, and did procure, from the appraisers, a certificate of appraisement, upon which he made what purports to be his true and only return of his doings on said execution. This certificate was preceded by these words :

After signing the paper annexed to this execution, and before this execution was returned into court, and before the return day thereof, we discovered certain errors in what purports to be our certificate, in stating the amount remaining to be satisfied on the several executions mentioned therein, and in stating the fractional part of the real estate appraised by us to satisfy this execution ; and now, before said return is made, in order to make a true and correct statement of our doings as said appraisers, we make the following certificate, to wit:

The certificate was, in all particulars, like that above set forth, except as follows :

December 17th, A. D. 1842. Whereas the executions, with the costs and charges thereon, which issued in the suits in which said attachments were made, together with this execution, remain to be levied upon said real estate, to the amount of *thirty three thousand six hundred ninety three dollars and thirty four cents,* we have therefore set off to the said John Bates *six hundred and nineteen thousand two hundred and three undivided three million five hundred and thirty five thousand nine hundred and sixty eight parts* of the above described real estate, to hold to him the said John Bates, the creditor, his heirs and assigns forever, in common and undivided with the said debtors, and the other attaching creditors aforesaid, which said fractional part of $\frac{619,203}{3,535,968}$, so set off to the said John Bates, we have appraised at *six thousand one hundred ninety two dollars and three cents.*

The said Phillips's second return was preceded by the following words :

After having signed the paper annexed to this execution, but before I had returned this execution, with my doings thereon, into the clerk's office of the court of common pleas, to which the same is returnable, and before the return day thereof, I discovered certain errors in stating the amount remaining to be satisfied on the several executions mentioned therein, and in stating the fractional part of said estate set off to satisfy this execution and all fees; and in order to make a true and correct return of my doings in regard to the levy of the said execution, I now make the following true certificate of my doings, which I mean and intend as the true and only return of my doings in regard to the levy of said execution upon the real estate described in the above certificate of the appraisers, to wit:

The second return of said Phillips was, in a. particulars,

Bates *v.* Willard.

like the first, except the conclusion thereof, which was as follows:

And also appraised *six hundred nineteen thousand two hundred and three undivided three million five hundred and thirty five thousand nine hundred and sixty eight parts thereof, at the sum of six thousand one hundred ninety two dollars and three cents,* and set off said fractional part of $\frac{619203}{3535968}$ to the said John Bates, the creditor, at the price aforesaid, which is the balance due on this execution with all fees and charges, to hold to him, his heirs and assigns forever, in common and undivided with the said debtors and the other attaching creditors aforesaid. All which appears by the certificates of the justices of the peace and of said appraisers above written, which are hereby referred to and made part of this return. And I this day levied this execution upon said fractional part of said real estate, with all the buildings, water privileges, watercourses and appurtenances thereto belonging, to wit: $\frac{619203}{3535968}$ thereof, and delivered seizin and possession thereof to the said creditor, to hold to him, his heirs and assigns forever, in common with the said debtors and the other attaching creditors aforesaid, in full satisfaction of the balance due on this execution, as by his agent's receipt hereon appears; and so I return this execution satisfied.                                        Ivers Phillips, *Deputy Sheriff.*

(Fees $72·10.)

Worcester, ss.    December 17th, A. D. 1842.    Received of Ivers Phillips seizin and possession of the above described premises, in full satisfaction of the balance due on this execution.

Morris Larned, agent for said creditor

The said Phillips, on the first Monday of March 1843, and before the adjournment of the court of common pleas which sat on that day, carried to the registry of deeds, and was permitted by the register to annex, and did annex, this return to the plaintiff's execution, then lying in the registry for record, and where it had been all the time since February 25th 1843, when first left there by Phillips. The said paper was recorded in said registry, immediately following the record of the plaintiff's execution and original return. On that day, (6th of March,) when said Phillips annexed said paper to said execution of the plaintiff, he drew across the said original return, diagonally, a black line. This was done without the consent of the register, who told him to do it, if at all, on his own responsibility, or to that effect, and that it would not be transferred to or appear on the record. There was no note of reference, on the record, from the original return or execution to the second,

nor from the second to the original; nor did it appear that said Phillips requested any such to be made. No second record of the execution was made, with the paper which was so left for record, on the 6th of March; nor did it appear that the register was requested to make any new registry of said execution with the second return. No entry was made, in the index book of said registry, of the receipt of the second return. The plaintiff tendered evidence to prove that said Morris Larned had no authority from him to receive seizin of said estate, so set off to him on execution; that he was not his agent for that purpose; and that he had in no way ratified or confirmed any thing so done by said Larned in the receipt of seizin indorsed by him as above stated. But this evidence was rejected as inadmissible, the judge ruling that the return of the officer was conclusive in this particular, and that it was not open to be controlled by evidence; to which ruling the plaintiff's counsel excepted. It also appeared that the plaintiff and the other creditors had continued in possession of said estate, or in the receipt of the rents and profits thereof, from the time of said levy of said execution, (about the 17th of December 1842,) to the time of the commencement of this action.

To the original levy and return the plaintiff objected that it was invalid and void, first, for uncertainty in the description, because the officer, in his return, had not described the estate set off with sufficient certainty; that in one instance the return, instead of setting out the estate by metes and bounds, referred to a deed on record, giving the book and page of the registry; when, upon reference to the said book and page, there appear two deeds from the said grantor to said company, thus leaving it uncertain which deed or what estate was intended by the reference; or whether both of them were not, and the estate covered by them, thereby intended. This objection points to that part of the return in which there is the following reference: "Dyer Davis, recorded book 306, page 138."

The plaintiff's counsel also contended that the return was invalid and void, because it appears upon the face of the

return, which is to be taken to be true, and to contain a true statement of what the appraisers did, that the appraisers appraised the same land in several instances twice ; appraising, in one instance, " all the land, supposed to be about two hundred acres," &c. and again, " all the land, supposed to be about one hundred and fifty acres," &c. " and all the real estate " conveyed to said company, by the following deeds, &c., referring, then, to a great number of registered deeds ; when, by reference to said deeds, it will appear that " all the land," &c. and " all the real estate " above referred to, which are put down in the return as separate and distinct parcels of real estate, and which should therefore have been, and for aught appearing were appraised separately, are, in point of fact, one and the same real estate ; and also that the deed of Morris Larned conveyed nothing to the execution debtors, in the 150 acres, besides the right of flowing.

It was also objected to this levy and return, that in several instances the right of flowing land is set off, and then the same land itself is included in the appraisement and set off to the creditor, and that for this reason it was invalid.    It was also further objected, that it did not appear whether the levy included the land covered by the waters of the Larned Pond, referred to in the return, or whether the right to flow the same was the interest set off to the creditors ; and that, for this ambiguity and uncertainty, the levy was void.    It was also furthermore objected to this levy, that it was void, because the right of flowing the said Morris Larned land, &c. and the right to erect a dam, &c. are set off subject to an incumbrance and charge, to wit, that of paying all damages to others caused by flowing their land, without stating what the amount or value of this incumbrance or charge was, as will appear by reference to said Larned deed, referred to in said return, as recorded book 317, page 245, in the registry of deeds for said county.

The plaintiff's counsel also insisted that the levy was invalid, because it was manifest, from the return itself, that the estate could have been divided without injury to the whole,

Bates *v.* Willard.

though the appraisers had returned that it could not so be ; that their return was not conclusive ; and that the fact that there were simultaneous seizures on the several executions did not alter or affect the case.

And finally, and as a fatal objection to this levy and return, it was urged that the execution having been levied, though professedly for a balance, yet, in fact, for more than the whole amount due for debt, costs and charges, and there being no way by which the return could be rectified or an apportionment made, and the excess rejected, the whole levy must be held void and treated as a nullity, so that nothing passed to the plaintiff by the return of the officer ; and that the plaintiff and the other creditors were in, holding the estate without title, and as mere wrong-doers, liable to be ousted by the debtors or subsequently attaching creditors, who should see fit to levy an execution ; it being proved or admitted that there were suits against said company still pending, in which attachments were still subsisting upon said real estate, and debts to a large amount due to the plaintiffs in such suits, for the recovery of which the same were instituted.

· The plaintiff objected to the admission of the second return as evidence of a levy or extent of the plaintiff's execution on the real estate of said company, because, in the first place, it was not competent for an officer, after he had made a levy of an execution, delivered seizin to the creditor, and made a return thereof on the execution, and after he had caused the execution, with his return thereon indorsed, to be registered in the registry of deeds, nor after it had been deposited for record as above stated, to amend, alter, or cancel his return so made and deposited for record, and upon such alteration or cancellation to make another and different return, though before the return day of execution, and have the same again recorded in the registry of deeds ; especially when, as in this case, the evidence shows that while he was pretending to deliver seizin and possession to the alleged agent of the plaintiff, and while pretending to act by virtue of his writ of execution, the precept itself was not in his possession, but in the

registry office, out of his custody, and beyond his control, and all this being done before the other and first return had been attempted to be cancelled, and before the said paper, purporting to be an amended return, had been annexed to the execution in the registry office.

It was also urged that the second return was not what it purported to be — a correction in the statement of what was done — but that it set forth in fact a new appraisement, and a new levy; that it made the plaintiff and other creditors tenants in common with the debtors, thus creating a very different estate or tenancy from that created by the first return and levy; that, coinciding in the descriptive portion of it, as it does with the original return, it was liable to every objection above urged to that return, in this particular.

It was also contended that, if the second paper was not good as a return, on any grounds, then, as Phillips had cancelled his first return in the registry, he had made, and could make no return of the levy into the clerk's office; and that, in fact, no effectual return or service of said execution had been made by Phillips.

It was furthermore and finally contended on behalf of the plaintiff, that if the seizure and application of the real and personal estate were to be regarded as made simultaneously by the officer, then the first return would be void, because the levy was still for too large a sum.

But all these objections to the levy, extent and return, were overruled, for the purpose of presenting to the full court the several questions arising in the case; and the judge ruled, that the levy was a good and valid one; that the return was conclusive as to delivery of seizin; that it was not competent to the plaintiff to show by parol evidence that the said Larned was not the agent of the plaintiff to receive seizin; and that it was not competent to show by parol evidence that the officer had not the execution when seizin was delivered to Larned, and that it would not be a valid objection to the levy, if it could be shown. A nonsuit was therefore entered; but if, in the opinion of the full court, any of said rulings of the judge

in the premises were wrong, and they are of opinion that the defendant was liable on either count in the plaintiff's writ, then the nonsuit is to be set aside and a new trial granted; but if they are of opinion that all said instructions and rulings of the presiding judge were correct, or that this action could not be sustained against the defendant, then the nonsuit is to stand.

*Bartlett & Bacon*, for the plaintiff.

*C. Allen & B. R. Curtis*, for the defendant.

DEWEY, J. The right of the plaintiff to maintain this action depends upon the validity of the levy of his execution upon the real estate of the Dudley Woollen Manufacturing Company, made by Ivers Phillips, a deputy of the defendant. Various objections were taken to this levy, several of which, however, present no questions of difficulty, but have been suggested with a view, as we suppose, of having a judicial decision upon all questions that might by possibility hereafter arise thereon.

1. It is said that the levy and return are void for uncertainty in the description of the estate set off. It is supposed to be so in this, viz. that the reference to certain deeds, recorded in the registry, is uncertain; there being found recorded in book 306 of the registry of deeds, page 138, two deeds to Dyer Davis; leaving it uncertain to which the reference in the return is intended to apply. To this objection, it seems to us, the obvious answer is, that if both deeds are included in the description, and the land described in both deeds is really embraced in the return, then the levy and appraisement must include both; if otherwise, then it will include only the land embraced in such deed as is indicated in the reference. In the introductory part of the clause in the return, these sources of description are referred to as " deeds," not a "deed," and are broad enough to include two deeds of Dyer Davis, if the whole description of land set off, taken together, does not exclude one of them, and thus restrict the reference. Which is the true construction of the levy, it is not necessary that we now decide

7 *

2. It is next objected, that the appraisers have appraised the same land twice, as appears from the double descriptions, and the setting off of the land, and also the right to flow the same land ; and also that it does not appear whether the levy included the fee of the land covered by the waters of the Larned Pond, or merely the right to flow the same. But, as it appears to us, there is no such case of uncertainty in this respect, nor any sufficient reason, apparent upon this return, for adopting the suggestion of the plaintiff that the same estate has been twice estimated in the appraisement. Taking the return altogether, it amounts to no more than this ; that the interest taken has been stated in these various forms of description, with a view to pass the entire estate of the debtors, under either form, as that interest might thereafter be more fully disclosed ; and it is sufficient that it is broad enough to cover all the interest of the execution debtors ; and so far as the fee is taken, it is to be assumed that the appraisement was for the value of the land, and not for an easement in it.

3. It was also objected that this levy was void, because the right of flowing Morris Larned's land, and the right to erect a dam, &c. are set off subject to an incumbrance or charge, viz. paying all damages caused by flowing such lands, without reciting what the amount of this charge is. It does not seem to us that this part of the levy presents the case of a deduction for an incumbrance requiring the statement of the amount of such incumbrance, and the sum deducted therefor. The appraisers set off certain estate, which was held by the judgment debtors, by a deed from Morris Larned to said debtors, subject to certain conditions of paying all damages occasioned by the flowing of this land ; and they set it out as subject to all such conditions, exceptions and reservations, in this respect, as are stated in the deed of Larned to the debtor ; and this, we think, they might well do.

4. It was insisted that the levy was invalid, because it was manifest that the estate might have been set off in severalty, without injury to the whole. But this position cannot be maintained ; and upon this return of the officer, and certificate

of the doings of the appraisers, we must hold it to have been necessary to set off this estate in proportionate parts, and not in severalty.

5. Having disposed of what may be termed the minor objections taken to this levy, we come to the objection much more strongly pressed, viz. that it is invalid, inasmuch as the original levy and appraisement were for a sum larger than the amount of the execution and all costs of levying the same, and that a return of the doings of the officer and appraisers having been once certified, and the same, with the execution, filed for record in the office of the register of deeds, it was incompetent for the officer to change his return of his doings on such execution, or, by any new certificate or amended return, give effect to a defective levy.

The validity of the levy of the plaintiff's execution, as it seems to us, must depend upon the effect to be given to the amended return of the officer, recorded in the registry of deeds on the 6th of March 1843. Giving full effect to the decisions of this court, no legal title to the estate set off to the plaintiff could have vested in him, under the return and certificate first made by the officer and filed, with the execution, for record in the office of the register of deeds on the 25th of February, 1843, as upon the face of it it was clearly bad, the levy being made for a greater sum than the amount of the execution and costs of levy. *Pickett* v. *Breckenridge*, 22 Pick. 297. The question then arises, how far it was competent for the officer to amend his first certificate, and to what stage of the proceedings does this right to amend continue ? The plaintiff insists that the power of the officer thus to amend ceases with the filing of the execution, and his certificate of levy, with the register of deeds for record. The defendant insists that it is competent to correct and amend the return at any time before the return day of the execution, and before the same is actually returned to the clerk's office.

We are aware that there has been some discrepancy in the course of the numerous decisions upon the question of amendments of returns of officers, and how far they are to be allowed

when they may affect the rights of third persons. Certain it is, that the doctrine for a time supposed to prevail, viz. that no amendment of officers' returns would be allowed, where the interests of third parties might be affected, has been greatly modified, if not substantially overruled, in the later cases of *Haven* v. *Snow*, 14 Pick. 28, and *Day* v. *Johnson*, 17 Pick. 106. It is not necessary, however, particularly to limit and define the extent, or consider the effect, of amendments made under leave of this court. This case presents no such question. The return, such as it is, was the act of the officer, and made while he was the lawful holder of the execution, and before the return day. The case of *Welsh* v. *Joy*, 13 Pick. 482, is a strong authority to show that, in all cases, unless it be the case of an execution levied upon real estate and left with the register of deeds for record, the return upon an execution does not become a matter of record, and that the officer does not need the permission of the court to amend such return, before it has been returned to the clerk's office.

A familiar principle, now well settled, and which is in truth the great principle upon which the defence to this action can be maintained, if maintained at all, is, that full force and effect are to be given to the returns of sworn officers, made in the course of their official duty. Such returns are said to import verity, and are not collaterally to be controverted. The returns of sheriffs and their deputies are peculiarly of this character, and in questions arising between other parties are conclusive. Taking this rule, and giving it full force and effect, the amended return of the officer is the only true and accurate return of his doings in relation to the levy of the plaintiff's execution upon the real estate of the debtors, under the seizure of December 15th 1842. The officer, in his return, declares, in direct terms, that the amended statement is the only true statement of the amount levied, of the fractional parts set off to the creditor, and of his doings on the execution. This alone is the return indorsed on the execution at the time of its return to the clerk's office, and is the source of the plaintiff's title to the land set off on his execution. The

return of the execution to the clerk's office, with a certificate at large, by the officer, of his doings thereon, as all agree, is essential to the validity of a levy. When thus returned, the whole proceedings become a matter of record, and copies of such levy, certified by the clerk of the court, are the highest evidence of the levy. The question then arises, whether this return, thus indorsed on the execution, is to have full force and effect, or whether the title of the plaintiff to the premises set off has been lost by reason of the making of an erroneous certificate of the doings of the officer and appraisers, in the appraisement and levy of the execution, and placing the execution, and such erroneous certificate, in the office of the register of deeds for registry.

Without expressing any opinion as to cases of adverse rights acquired by purchase, or by attachment or levy made, between the 25th of February and the 6th of March 1843, (the period that elapsed between the time of entering with the register, for record, the first certificate and return on the execution, and that of the amended return,) none such being shown or suggested, we see no sufficient objection to the proposition, that as regards the debtors, and all others who have not acted upon the faith of the first return, the certificate of the doings of the officer and appraisers was amendable before the return day of the same, and before the same was actually returned ; that the same might be amended according to the truth ; that such amendment, setting forth the proceedings under the original seizure, has reference to such seizure, and being duly recorded in the office of the register of deeds within three months, as required by law, and the execution being duly returned to the clerk's office, with such amended return, as the true return and certificate of the levy and appraisement, the levy, as set forth in such amended return, may have full force and effect, and will not be defeated by previously filing in the office of the register of deeds, for record, the execution, with an erroneous certificate of the officer of his doings indorsed thereon.

It was strongly urged upon us by the counsel for the

plaintiff, that the Rev. Sts. *c.* 73, §§ 20, 21, have limited the right to amend the return of the levy to a period anterior to the recording of the same in the office of the register of deeds. This statute seems to us to have been enacted with a view of providing for cases of a character different from that before us It grants, in the cases specified in § 19, the privilege of full and entire waiver of the levy, with authority to satisfy the entire execution in any other mode, at the election of the judgment creditor. The case before us, as stated in the amended return, is that of perfecting, not that of waiving, the original levy. It is that of correcting and truly stating the original levy and appraisement, and not that of abandoning it and resorting to some other remedy for the satisfaction of the judgment.

Without deciding how far these provisions of §§ 19 and 20 are merely cumulative, and whether they do in fact restrict the creditor from exercising a right of waiver in a case where, independent of the statute, he might have waived his proceedings under a levy, it is sufficient for the present case to say, that these provisions of the statute do not reach the case at bar.                                    *Nonsuit to stand.*